IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBRA NICHOLL-KENNER<br>8 Eldorado Drive<br>Tabernacle, NJ 08088<br><br>      Plaintiff,<br><br>v.<br><br>LAWRENCEVILLE UROLOGY, P.A.<br>2 Princess Road, Suite J<br>Lawrenceville, NJ 08648<br>    and<br>PREMIER UROLOGY<br>ASSOCIATES, LLC<br>3131 Princeton Pike<br>Lawrenceville, NJ 08648<br>    and<br>JULIE PRETTYMAN<br>2 Princess Road, Suite J<br>Lawrenceville, NJ 08648<br><br>      Defendants. | CIVIL ACTION<br><br>DOCKET NO.:<br><br>**COMPLAINT WITH JURY DEMAND** |

### CIVIL ACTION COMPLAINT

Plaintiff Debra Nicholl-Kenner (hereinafter referred to as "Plaintiff" unless otherwise indicated) hereby complains as follows against Defendants.

### I. INTRODUCTION

1.    Plaintiff has initiated the instant action to redress violations by Defendants of the New Jersey Law against Discrimination (NJ LAD), the Family and Medical Leave Act ("FMLA"), and the Fair Labor Standards Act ("FLSA"). Plaintiff asserts that she was unlawfully terminated and that Defendants failed to properly pay Plaintiff overtime compensation.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff has raised federal claims herein under the FMLA and FLSA. This Court has supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims.

3. This Court has personal jurisdiction over Defendants because Defendants, by systematically soliciting business in New Jersey (and operating business locations therein), have sufficient minimum contacts with this judicial district that the exercise of such jurisdiction comports with judicial notions of fair play and substantial justice, satisfying the standards set forth in *International Shoe Company v. Washington*, 326 U.S. 309 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391, venue is properly laid in this district because Defendants conduct substantial, systematic and continuous activity in New Jersey and are subject to personal jurisdiction in New Jersey and because all of the acts underlying this lawsuit occurred in this District.

## III. PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual with an address as set forth above.

7. Defendant Lawrenceville Urology, P.A. (hereinafter "Defendant Lawrenceville") is a medical facility that offers specialized treatment and conducts clinical trials and is a wholly owned subsidy of Defendant Premier.

8. Defendant Premier Urology Associates, LLC (hereinafter "Defendant Premier") acquired Defendant Lawrenceville in or about February 2010 and was responsible for paying Plaintiff.

9. Defendant Julie Prettyman (hereinafter "Defendant Prettyman") at all relevant times was the Director of Clinical Research and was Plaintiff's immediate supervisor.

10. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendant Premeir and Defendant Lawrenceville (hereinafter collectively referred to as "Defendants Urology") are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

11. At all times relevant herein, Defendants' agents acted at the direction of and/or for the benefit of Defendants in the course and scope of their employment.

## IV. FACTUAL BACKGROUND

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. Plaintiff was hired by Defendant Lawrenceville in or about November of 2007 as a salaried employee.

14. Plaintiff worked for Defendants as a research coordinator.

15. Plaintiff's position did not require her to have any medical training.

16. Plaintiff did not have the authority to hire or terminate employees.

17. Plaintiff did not supervise any other employees while employed by Defendants.

18. Plaintiff physically worked for Defendants in Lawrenceville, New Jersey.

19. Plaintiff was required to clock in and out while employed by Defendants.

20. Plaintiff was required to make up time during weeks when she did not work a full forty (40) hours, but was not paid overtime when she worked more than forty (40) hours.

21. Plaintiff, on average, worked approximately ten (10) to fifteen (15) hours of overtime per month.

22. When Plaintiff would fall short of 40 hours, Defendants would deduct time from her paid time off (and in essence, dock her pay).

23. Defendant Prettyman told Plaintiff that she was an exempt employee and thus was not entitled to overtime.

24. Plaintiff began suffering from bladder problems in or about January of 2010.

25. Plaintiff required occasional days off due to her medical condition.

26. Defendant Prettyman exhibited hostility when Plaintiff informed management of her need for a surgery for her health condition(s).

27. Plaintiff required bladder surgery in or about June of 2010.

28. Plaintiff was on an FMLA qualifying leave from mid-June until mid-September of 2010 due to her serious health condition(s).

29. Upon returning from her FMLA leave, Defendants' Management treated Plaintiff negatively and informed her that due to her leave, she missed her quota.

30. Defendant Prettyman told Plaintiff's co-workers that because of Plaintff's leave and health issues that she was "throwing them under the bus."

31. Defendants' management also told Plaintiff that she could have returned to work earlier from her medical leave, implying that Plaintiff stayed out on a medical leave unnecessarily long.

32. Defendants' management expressed anger toward Plaintiff after she informed Defendants that she would require another surgery.

33. Defendants terminated Plaintiff on or about November 10, 2010, which was only approximately two (2) months after she returned from her FMLA-qualifying leave.

34. Defendants' proffered reason for Plaintiff's termination was because business was slow.

35. Plaintiff received a job posting from a recruiter shortly after she was terminated for a research coordinator position with Defendants.

36. Plaintiff believes and therefore avers that her termination was in violation of the FMLA.

## Count I
### Violations of the Family and Medical Leave Act ("FMLA")
### (Interference and Retaliation)
### - Against All Defendants -

37. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38. Plaintiff worked for at least 1,250 hour per year during the course and scope of her employment with Defendants.

39. Plaintiff worked for Defendants for more than 1 year and needed periodic time off from work for serious health conditions, including but not limited to issues with her bladder.

40. Defendants exhibited animosity towards Plaintiff for taking periodic medical leave for her bladder issues and due to Plaintiff taking a block leave for bladder surgery in mid-2010.

41. Defendants committed interference and retaliation violations of the FMLA by not properly advising Plaintiff of her FMLA rights as to days she missed intermittently due to her

serious health condition(s), exhibiting hostility towards Plaintiff for exercising her rights under the FMLA, by terminating Plaintiff for exercising her rights under the FMLA and/or by considering Plaintiff's FMLA-qualifying absences in Defendants' decision to terminate Plaintiff and by terminating Plaintiff to prevent her from taking additional requested FMLA leave.

42. These actions as aforesaid constitute both interference and retaliation violations of the FMLA.

### Count II
### Violations of the Fair Labor Standards Act ("FLSA")
(Failure to Pay Overtime Compensation)
- Against All Defendants -

43. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

44. Plaintiff did not oversee at least 2 employees during the course and scope of her tenure with Defendants during her period of employment.

45. Plaintiff did not have a job title that was supervisory or managerial during her employment with Defendants.

46. 'Plaintiff's work within Defendants did not require medical training, and involved taking general information from patients.

47. During most of Plaintiff's period of employment with Defendants she averaged at least ten (10) to fifteen (15) hours per month.

48. Plaintiff was paid a salary regardless of how many hours she worked for Defendants.

49. Plaintiff was never paid time and half for hours when she worked more than 40 hours in a week.

50. Plaintiff is entitled to a very substantial amount of lost wages for unpaid overtime compensation during the course and scope of her employment with Defendants.

51. Defendant Prettyman was personally responsible for failing to properly pay Plaintiff and personally failed to correct that Plaintiff was paid unlawfully despite being responsible for explaining compensation and benefits to employees.

### Count III
### Violations of the New Jersey Wage & Hour Law(s)
(Failure to Pay Overtime Compensation)
- Against All Defendants -

52. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53. Plaintiff did not oversee at least 2 employees during the course and scope of her tenure with Defendants during her period of employment.

54. Plaintiff did not have a job title that was supervisory or managerial during her employment with Defendants.

55. Plaintiff's work within Defendants did not require medical training, and involved taking general information from patients.

56. During most of Plaintiff's period of employment with Defendants she averaged at least ten (10) to fifteen (15) hours of overtime per month.

57. Plaintiff was paid a salary and had her pay deducted if she did not work a full 40 hours, but was not paid overtime when she worked in excess of 40 hours.

58. Plaintiff was never paid time and half for hours when she worked more than 40 hours in a week.

59. Plaintiff is entitled to lost wages for unpaid overtime compensation during the course and scope of her employment with Defendants.

60. Defendant Prettyman was personally responsible for failing to properly pay Plaintiff, and he exhibited control over Plaintiff's compensation during her period of employment with Defendants.

## Count IV
## Violations of the New Jersey Law Against Discrimination ("NJ LAD")
### (Actual & Perceived Disability Discrimination)
### - Against All Defendants -

61. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

62. Plaintiff suffered from various health problems, including but not limited to those specified *supra*.

63. Plaintiff was terminated because of her known and/or perceived health problems.

64. Defendant Prettyman aided and abetted in the discrimination by making comments about Plaintiff's requested time off.

65. These actions as aforesaid constitute violations of the NJ LAD.

## Count V
## Violations of the New Jersey Law Against Discrimination ("NJ LAD")
### (Retaliation)
### - Against All Defendants -

66. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

67. Plaintiff requested accommodations for her health condition, which included missing occasional days for medical care and a medical leave for a surgery.

68. Defendants terminated Plaintiff because of her requests for accommodation (time off from work).

69. Plaintiff was otherwise able to perform the essential functions of her position.

8

70. Defendant Prettyman aided and abetted in the retaliation.

71. These actions as aforesaid constitute violations of the NJ LAD.

**WHEREFORE,** Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting unlawful pay practices and unlawful retaliation/discrimination;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

C. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendants' actions;

D. Plaintiff is to be awarded punitive damages and/or liquidated damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious, and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

E. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

F. Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees as provided by applicable federal and state law; and

G. Plaintiff is permitted to have a trial by jury.

Respectfully submitted,

**KARPF & KARPF, P.C.**

By: _____

Ari R. Karpf, Esquire
3070 Bristol Pike
Bldg. 2, Ste. 231
Bensalem, PA 19020
(215) 639-0801

Date:   January 12, 2011