**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBRA NICHOLL-KENNER,<br><br>    Plaintiff,<br><br>    v.<br><br>LAWRENCEVILLE UROLOGY, P.A.,<br>et al.,<br><br>    Defendants. | CIVIL ACTION NO. 11-195 (MLC)<br><br>**MEMORANDUM OPINION** |

**COOPER, District Judge**

The plaintiff, Debra Nicholl-Kenner ("Kenner"), commenced this action against the defendants, Lawrenceville Urology, P.A. ("LUPA"), Premier Urology Associates, LLC ("PUA"), and Julie Prettyman ("Prettyman") (collectively, "Defendants"). (See dkt. entry no. 1, Compl.) Kenner seeks damages under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-4.1, et seq. ("NJWHL"), the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"), and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, et seq. ("NJLAD"). (Id.)

Kenner moves for summary judgment ("the Motion") with respect to her FLSA and NJWHL claims ("Overtime Claims"), on the issue of liability. (Dkt. entry no. 20, Motion.) Defendants cross-move for summary judgment with respect to Kenner's

interference claim under the FMLA ("Interference Claim"), her discrimination claim under NJLAD ("Discrimination Claim"), and her retaliation claims under both the FMLA and NJLAD ("Retaliation Claims"). (Dkt. entry no. 23, Cross Motion.)

The Court will resolve both the Motion and Cross Motion without oral argument pursuant to Local Civil Rule 78.1(b).

**I.   Background**

Kenner was hired by and worked as a certified research coordinator ("CRC") for the Advance Med Research ("AMR") division of LUPA. (Dkt. entry no. 29-2, Kenner Dep. at 50-51, 55; dkt. entry no. 29-3, Prettyman Dep. at 6-7, 12.) LUPA merged with several other practices and, in February of 2010, became a part of PUA. (Kenner Dep. at 64; dkt. entry no. 22-2, Milstein Cert., Ex. J, Karlin Dep. at 6.) PUA continued to employ Kenner in the AMR division. (Prettyman Dep. at 6-7.) During her tenure with both LUPA and PUA, Kenner was supervised by Prettyman. (Kenner Dep. at 58; Prettyman Dep. at 10-11; Karlin Dep. at 8, 35.)

Kenner required surgery in 2010, and thus asked for and was granted approval for eight weeks of FMLA leave. (<u>See</u> Kenner Dep. at 67-69; Prettyman Dep. at 41-43; dkt. entry no. 29-4, Wye Dep. at 15, 37-38, 41.) Kenner ultimately took a total of twelve weeks' leave because she required additional and unforeseen surgery. (Kenner Dep. at 69-70; Prettyman Dep. at

42.)  She returned to work in September of 2010.  (Kenner Dep. at 74-75.)

PUA terminated Kenner's employment in November of 2010, approximately eight weeks after she returned from FMLA leave. (Kenner Dep. at 75; Prettyman Dep. at 43.)  Both Prettyman and Dr. Gary S. Karlin, the doctor who oversaw the AMR division and served as President of PUA, testified at their respective depositions that the decision to terminate Kenner was based on: (1) a prolonged lack of enrollment in AMR studies, which led to decreased revenue from the AMR division; and (2) Kenner's lack of seniority, as compared with other AMR CRCs.  (Prettyman Dep. at 12, 14-15, 50; Karlin Dep. at 20, 43, 53-54.)

## II. Standard of Review

The Court must grant summary judgment if the moving party shows both that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  The Court, in deciding a motion for summary judgment, must construe the facts and inferences in the light most favorable to the nonmoving party. Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).  After making all reasonable inferences in the nonmoving party's favor, a genuine issue of material fact exists if a reasonable jury could find for the nonmoving party. Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010).

"'With respect to an issue on which the nonmoving party bears the burden of proof, the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case.'"  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004) (citation omitted).

The Court, during summary judgment proceedings, is not tasked with "weigh[ing] the evidence and determin[ing] the truth of the matter[s]" raised in the Complaint and referenced in the parties' motions.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The Court, instead, is tasked simply with determining "whether there is a genuine issue for trial."  Id.

**III. The Motion**

Kenner asks the Court to enter judgment in her favor and against Defendants with respect to her Overtime Claims, on the issue of liability.  (See generally dkt. entry no. 19, Kenner Br.)  She specifically asks the Court to resolve three issues in her favor, i.e.: (1) whether Kenner meets the basic requirements for relief under the FLSA and NJWHL ("Overtime Laws"); (2) whether, as Defendants assert, Kenner is an "exempt employee", i.e., an "administrative" or "professional" employee who is not entitled to relief under the Overtime Laws; and (3) whether the Court may, at this juncture, find Prettyman individually liable.  (Id.)

4

### A. Kenner Satisfies the Basic Requirements for Relief under the Overtime Laws

Neither Kenner nor Defendants have explicitly or directly addressed whether Kenner meets the basic requirements for relief under the Overtime Laws. They appear instead to assume that she meets those requirements. (See id. (addressing issues relating to exemption without first addressing basic requirements); see dkt. entry no. 22-2, Defs.' Opp'n Br. (same).)

The Overtime Laws generally ensure that employees who work more than forty hours per week ("Overtime") receive Overtime pay equal to at least one and one-half times their regular hourly wage. 29 U.S.C. § 207(a) (requiring Overtime pay equal to at least one and one-half of an employee's regular hourly wage); N.J.S.A. § 34:11-56a4 (requiring Overtime pay equal to one and one-half of an employee's regular hourly wage).[1] It appears that the parties agree that Kenner was an employee, that LUPA and PUA were employers, and that Kenner worked more than forty hours per week. (See dkt. entry no. entry no. 19-6, Time Cards.) The Court accordingly concludes that Kenner satisfies the basic requirements for relief under the Overtime Laws.

---

[1] The NJWHL mirrors the FLSA in most respects. See, e.g., N.J.A.C. § 12:56-7.2 ("the provisions of 29 CFR [sic] Part 541 are adopted herein by reference"); Garcia v. Freedom Mortg. Corp., 790 F.Supp.2d 283, 288 n.7 (D.N.J. 2011) ("The NJWHL is patterned after the FLSA, and New Jersey courts look to the FLSA for guidance.") It is thus appropriate to examine the Overtime Claims under federal law. (See id.)

>    B.  **The Court Cannot Resolve the Motion, insofar as the Motion Concerns Application of Exemptions to the Overtime Laws, Because the Parties Have Presented Genuine, Disputed Issues of Material Fact**

Defendants assert that the administrative and professional exemptions to the Overtime Laws preclude an entry of summary judgment in Kenner's favor. (See dkt. entry no. 12, Am. Answer; Defs.' Opp'n Br. at 17-25.) Kenner argues that, as a matter of law, neither exemption applies to this matter. (Kenner Br. at 5, 8-15.)

We note that exemptions to the FLSA "should be construed narrowly, that is, against the employer." Lawrence v. City of Phila., 527 F.3d 299, 310 (3d. Cir. 2008). Further, "an employer seeking to apply an exemption to the FLSA must prove that the employee and/or employer comes [sic] plainly and unmistakably within the exemption's terms." Id. (quotations marks omitted, emphasis in original).

>    1.  **Kenner's Duties as a CRC**

The deposition transcripts submitted by the parties demonstrate that Kenner's duties, like those of other AMR CRCs, were evenly split between three categories of activities, i.e.: (1) meeting patients enrolled in AMR studies, reviewing informed consent paperwork with patients, and collecting patients' information; (2) data entry; and (3) administering treatments, providing instruction to patients regarding self-administration

of treatment, and shipping lab samples. (Kenner Br. at 2; see also dkt. entry no. 22-2, Ex. L, Adamson Dep. at 10-16, 19 (detailing CRC responsibilities); dkt. entry no. 29-3, Prettyman Dep. at 20-21, 23-26, 28, 85 (same).)

**2.   The Administrative Exemption to the Overtime Laws**

The administrative exemption to the Overtime Laws applies to employees: (1) who receive at least $455/week in compensation; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200. Kenner argues that she is not an administrative employee because she did not participate in either the management or general business operations of her employers, and she lacked discretion in the discharge of her duties. (Kenner Br. at 12-15.)

Defendants argue that Kenner did, in fact, participate in the general business operations of both LUPA and PUA. They cite the regulations relating to the FMLA in support of their position, which state that "[t]o meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or

7

selling a product in a retail or service establishment." (Defs.' Opp'n Br. at 18-19 (citing 21 C.F.R. § 541.201).) Defendants also argue that Kenner had discretion in choosing how to contact patients, review informed consent documents, answer patients' questions about informed consent and treatments, recruiting patients, and performing complex medical functions. (Id. at 20.)

### 3. The Professional Exemption to the Overtime Laws

The professional exemption applies to employees who earn at least $455 per week, whose primary duty is the performance of work that requires "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction". 29 C.F.R. §§ 541.300(a)(1), (2)(i).[2]

Kenner argues that she is not, as a matter of law, a professional employee because AMR CRCs do not perform work that requires "advanced" knowledge in science. (Kenner Br. at 10-11.) She also argues that most AMR CRCs learn their responsibilities through on-the-job training instead of through "a prolonged course of specialized intellectual instruction."

---

[2] The professional exemption also applies to employees whose primary duty is the performance of work requiring "invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." 29 C.F.R. §§ 541.300(a)(2)(ii). Defendants have not, however, asserted the so-called "artistic professional" exemption as a defense to the Overtime Claims.

(Id.)  Kenner notes that her AMR co-workers, CRCs David Adamson and Melissa Ciatteo, performed their work without the benefit of relevant education.  (Id.)  Adamson, for example, held a college degree that was unrelated to his workplace responsibilities and learned to discharge those responsibilities only through on-the-job training.  (Adamson Dep. at 8-10.)  Ciatteo held only a high school diploma and had not worked in a similar capacity.  (Prettyman Dep. at 16, 18, 26.)  She, like Adamson, learned her CRC responsibilities through on-the-job training.  (Id. at 18-19.)

   Defendants, in their opposition papers, shift the focus from Adamson's and Ciatteo's qualifications and training to Kenner's education and training.  Defendants argue that Kenner -- who studied at Rutgers University, earned a certificate in medical assistance from the Lyons Institute, earned a separate CRC certificate, and regularly attended continuing education related to medical studies -- had the specialized knowledge referred to by the federal regulations.  (Defs.' Opp'n Br. at 24-25; see also Kenner Dep. at 5-15 (describing Kenner's educational background).)  Defendants also note that Kenner described her CRC responsibilities as "professional".  (Defs.' Opp'n Br. at 24-25.)

### 4. Both Parties Failed to Address Kenner's "Primary Duties", as that Phrase Appears in Definitions for Both the Administrative and Professional Exemptions

Neither party has discussed or otherwise referenced the applicability of 29 C.F.R. § 541.700 ("Section 541.700"), which defines the "primary" aspect of the "primary duties" referenced in the regulations pertaining to both the administrative and professional exemptions. In FLSA cases, a court must first determine the employee's primary duty, and then determine whether that primary duty exempts the employee from any group that might enjoy the FLSA's protections. See, e.g., Maestas v. Day & Zimmerman, LLC, 664 F.3d 822, 827 (10th Cir. 2012). Section 541.700 provides:

> (a) To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.
>
> (b) The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time

> performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

29 C.F.R. § 541.700(a)-(b).

Section 541.700 sets forth a qualitative rather than a quantitative test. See Soehnle v. Hess Corp., 399 Fed. Appx. 749, 751-52 (3d Cir. 2010) (emphasis added) (applying 29 C.F.R. § 541.700 to another FLSA exemption); see also VanStory-Frazier v. CHHS Hosp. Co., LLC, No. 08-3910, 2011 WL 5942112, at *5-9 (E.D. Pa. Nov. 29, 2011) (setting forth qualitative analysis of plaintiff's primary duty for purposes of applying administrative exemption to plaintiff's FLSA claim).

The parties' failure to set forth which of Kenner's duties comprised her "primary duties" controls the disposition of this matter. Viewing the evidence in the light most favorable to the nonmoving party, i.e., to Defendants, the Court concludes that this -- the determination of Kenner's primary duties as a CRC -- constitutes a genuine issue of material fact and precludes the entry of summary judgment upon Defendants' liability for the Overtime Claims. The record demonstrates that at least some of Kenner's workplace duties, if they were her primary duties, would support Defendants' argument that the administrative

11

and/or the professional exemptions apply.  See Pignataro, 593 F.3d at 268; Conoshenti, 364 F.3d at 145-46.  The qualitative analysis of Kenner's duties will thus remain an issue for trial.

### C. Issues of Material Fact also Preclude Determination of Whether Prettyman May be Held Individually Liable

The parties disagree whether Prettyman was an "employer" within the definition provided by the FLSA, which states that an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee".  29 U.S.C. § 203(d).  Kenner argues that the Court must broadly construe the term "employer".  (Kenner Br. at 16.)  Kenner also argues that Prettyman acted as an employer because Prettyman supervised Kenner's division, answered Kenner's questions relating to Overtime pay, and answered Kenner's interrogatories in this matter.  (Id. at 16-17.)

The Court must, as noted above, construe all facts in the light most favorable to the nonmoving party.  See Pignataro, 593 F.3d at 268.  Prettyman and Karlin testified that Prettyman informed but ultimately lacked authority to make managerial decisions, such as decisions relating to the continued employment or termination of CRCs.  (Prettyman Dep. at 12, 14, 70-72, 74; Karlin Dep. at 12-14.)  Because such facts, viewed in the light favoring Prettyman, tend to prove that Prettyman did not "act . . . in the interest of an employer in relation to an

12

employee", a determination concerning Prettyman's individual liability is an issue best left for trial. See <u>Pignataro</u>, 593 F.3d at 268

**IV. The Cross Motion**

Defendants raise three arguments in the Cross Motion, <u>i.e.</u>, that: (1) as a matter of law, Kenner's interference and retaliation claims under the FMLA fail because Kenner was not eligible for FMLA leave; (2) the Interference Claim fails because Kenner has not produced evidence to support that claim; and (3) both the Discrimination Claim and Retaliation Claims fail because Defendants have demonstrated that Kenner was terminated for non-discriminatory reasons.

    **A.    Because Defendants Represented that Kenner was Eligible for and Granted Her FMLA Leave, Defendants are Now Estopped From Asserting Ineligibility as a Defense.**

Defendants argue that Kenner's various FMLA claims -- that is, the Interference Claim and one of the two Retaliation Claims -- fail as a matter of law because Kenner was allegedly ineligible for FMLA leave. They assert that Kenner was ineligible for FMLA leave because she did not work for a qualified employer for the entirety of the twelve-month period preceding her leave. (Defs.' Opp'n Br. at 27-28.)

Kenner raises several arguments in response. (<u>See</u> dkt. entry no. 25, Kenner Opp'n to Cross Motion.) The most pertinent

13

and persuasive argument, however, is that Defendants are now estopped from asserting this defense. (Id. at 12 ("Defendants conclusively approved Plaintiff as eligible under the FMLA and granted her FMLA leave such that it [sic] would be estopped from asserting Plaintiff was not FMLA eligible.").)

A former version of Section 825.110 of Part 29 of the Code of Federal Regulations ("Section 825.110") addressed facts similar to those presented in this action. The former version of Section 825.110 stated that an employer that "confirms eligibility at the time the notice for leave is received" "may not subsequently challenge the employee's eligibility." 29 C.F.R. § 825.110 (1995). Several courts, however, held that the former version of Section 825.110 was an impermissible enlargement of the class of employees eligible for FMLA protections. See Erdman v. Nationwide Ins. Co., 582 F.3d 500 (3d Cir. 2009); Woodford v. Cmty. Action of Green Cnty., Inc., 268 F.3d 51 (2d Cir. 2001). These courts held that Section 825.110 impermissibly enlarged the class of employees eligible for FMLA leave because the FMLA directly addressed and set limits on that class. Erdman, 582 F.3d at 506-07; Woodford, 268 F.3d at 54-57. Section 825.110 was amended in 2010 and now lacks this language.

In Woodford, however, the United States Court of Appeals for the Second Circuit recognized that the FMLA did not set

14

limits on or otherwise address the application of traditional notions of equitable estoppel. The Second Circuit thus stated that:

> even in the absence of a formal regulation, the doctrine of equitable estoppel itself may apply where an employer who has initially provided notice of eligibility for leave later seeks to challenge that eligibility. Thus, future employees who rely to their detriment upon the assurance of their employer that they qualify for leave under the FMLA may have recourse to the doctrine of equitable estoppel even without an enforceable regulation protecting their right to rely upon an employer's notice of eligibility.

Woodford, 268 F.3d at 57. The United States Court of Appeals for the Eighth Circuit has adopted a similar position. See Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 494 (8th Cir. 2001) (recognizing and applying doctrine of equitable estoppel in FMLA action). The United States Court of Appeals for the Third Circuit ("Third Circuit") has not yet addressed the application of equitable estoppel to FMLA claims.

We find the above-quoted passage from Woodford both instructive and persuasive. We thus hold that, pursuant to the reasoning set forth in Woodford and quoted above, traditional application of the doctrine of equitable estoppel may prevent an employer from asserting ineligibility for FMLA leave if: (1) the employer previously informed its employee that he or she was

15

eligible for such leave; and (2) the employee relied on that information to his or her detriment.

The evidence in the record demonstrates that Kenner asked her employers for and was granted FMLA leave. (See Kenner Dep. at 66-70; Prettyman Dep. at 76; Wye Dep. at 15, 18-19, 37-38.) That same evidence, viewed in the light most favorable to Kenner, demonstrates that she relied on her employers' representation that she was eligible for FMLA leave. (See Kenner Dep. at 66-70 (demonstrating that Kenner actually exercised FMLA leave); Prettyman Dep. at 76 (same); Wye Dep. at 15, 18-19, 37-38 (same).) The Court thus concludes that it would be inappropriate to enter summary judgment in Defendants' favor.[3]

### B. Plaintiff Has Not Introduced Evidence of an Interference Claim under the FMLA

Defendants argue that the Court should enter judgment against Kenner and in their favor with respect to the Interference Claim because Kenner has failed to produce any

---

[3] Because we find that the evidence, as viewed in the light most favorable to Kenner, supports the argument that Defendants are equitably estopped from asserting that Kenner was not eligible for FMLA leave, we do not reach Defendants' argument that LUPA and PUA were not joint employers. (See Defs.' Opp'n Br. at 27-28.) If we reached this argument, we would defer decision upon it because the Third Circuit is currently considering this issue in a case of first impression. See In re: Enterprise Rent-a-Car Wage and Hour Emp't Litig., No. 11-2883 (3d Cir.) (argued on May 15, 2012).

evidence to support such a claim. (Defs.' Opp'n Br. at 30-31.) Kenner does not directly address this argument. She instead impliedly argues that Defendants have misconstrued her retaliation claim under the FMLA as an interference claim under the FMLA. (See Kenner Opp'n to Cross Motion at 9-10.)

We will enter judgment in Defendants' favor on Claim I of the Complaint -- the Claim at issue -- but only insofar as it raises a claim for interference under the FMLA. It will survive summary judgment, insofar as it raises a claim for retaliation under the FMLA.

### C. Questions of Fact Control the Retaliation Claims and the Discrimination Claim

Both parties recognize that the Court should resolve the Cross Motion, as it pertains to the Retaliation Claims, using the burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). (See Defs.' Opp'n Br. at 28-30, 31; Kenner Opp'n to Cross Motion at 12-24.) See also Dimare v. MetLife Ins. Co., 369 Fed. Appx. 324 (3d Cir. 2010) (applying McDonnell Douglas analysis to NJLAD claims); Atchison v. Sears, 666 F.Supp.2d 477, 488 (recognizing application of McDonnell Douglas burden shifting analysis to FMLA retaliation claims). Defendants also urge the Court to use that framework as a "starting point" for analysis of Kenner's retaliation claims under both the FMLA and NJLAD. (Defs.' Opp'n Br. at

17

31-32 (citing Andersen v. Exxon Co., 446 A.2d 486 (N.J. 1982) (recognizing adoption of McDonnell Douglas analysis for purposes of resolving discrimination claims under NJLAD).)

Even assuming, arguendo, that Defendants have established a legitimate, non-discriminatory reason ("LNDR") for terminating Kenner's employment -- that is, as both Prettyman and Karlin stated at their respective depositions, that Kenner's employment was terminated based on low AMR study enrollment and Kenner's lack of seniority -- questions of fact would control resolution of the Discrimination Claim and the Retaliation Claims. To resolve such claims, the Court must determine whether Defendants' stated LNDR was a pretext for unlawful conduct. This determination necessarily involves a "pure question of fact". See Pullman-Standard v. Swint, 456 U.S. 273, 287-88 (1982) (finding that existence of discriminatory intent "is not a question of law and not a mixed question of law and fact" but, instead, a "pure question of fact"). Kenner has presented sufficient evidence to demonstrate that the LNDR may have been a pretext for unlawful conduct, including, inter alia, evidence of temporal proximity between Kenner's FMLA leave and her termination. (See Kenner Br. at 8-20.)

18

**V.     Conclusion**

The Court will, for good cause shown, enter an appropriate Order and Judgment.[4]

          s/ Mary L. Cooper
          **MARY L. COOPER**
          United States District Judge

Date:     May 23, 2012

---

[4] Kenner has demanded a jury trial. (See, e.g. Compl. at 1, 9.)  It appears that Kenner has a right to a jury verdict upon at least some of her claims.  See Frizzell v. Sw. Motor Freight, 154 F.3d 641, 643-44 (6th Cir. 1998) (discussing a plaintiff's right to trial by jury under the FLSA and FMLA); see also Curtis v. Loether, 415 U.S. 189, 195 (1974) ("The Seventh Amendment [applies] to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.").

The Court intends, upon the filing of a Final Pretrial Order in this matter, to issue an Order to Show Cause, ordering the parties to state and support their positions on whether each claim should be decided by a jury or by the Court.  Such briefs shall, of course, provide citation to and analysis of relevant case law from the United States Court of Appeals for the Third Circuit, including, but not limited to, Cox v. Keystone Carbon Co., 861 F.2d 390, 392 (3d Cir. 1988).